```
                   UNITED STATES BANKRUPTCY COURT
                  FOR THE SOUTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )     Chapter 7
JOSEPH FRANCES HAMMEN and           )
CYNTHIA JOETTE HAMMEN,              )
                                    )     Bankruptcy No. 07-03523
     Debtors.                       )
_____        )
FRANCES E. BAIN ESTATE,             )
                                    )     Adversary No. 07-30156
     Plaintiff,                     )
                                    )
vs.                                 )
                                    )
JOSEPH F. HAMMEN and                )
CYNTHIA J. HAMMEN,                  )
                                    )
     Defendants.                    )
```

**ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS**

This matter came before the undersigned for trial on September 9, 2008. Plaintiff Frances E. Bain Estate was represented by attorney Robert G. Schlegel. Debtors/Defendants Joseph and Cynthia Hammen were represented by attorney Philip D. McCormick. After the presentation of evidence and argument, the parties were granted time to attempt a resolution. After three extensions, the final deadline for filing briefs was set for November 21, 2008. At that time, the parties informed the Court that they were unable to reach a resolution of the proceeding. Thus, the matter is now under advisement and ready for resolution by the Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Plaintiff asserts Debtors encroached on land owned by Frances Bain, now deceased, when they constructed a pond on their adjacent property in 2000. It seeks damages and exception from discharge. Debtors assert Mrs. Bain consented to the construction of the pond, which was beneficial to her property. They argue this action is barred by the statute of limitations and estoppel.

**FINDINGS OF FACT**

Debtors purchased a five-acre tract of land in Washington County, Iowa in 1999. This land is bordered on three sides by

land owned, at that time, by Frances E. Bain.  The remaining side is bordered by 320th Street.  The dam and pond were built in 2000.  Mrs. Bain died on October 12, 2005.  Three of her children are the executors of her Estate which is the Plaintiff in this adversary.

Before building their house, Debtors decided to construct a pond on the northeast portion of their land and a terrace on the western border.  They contacted the Washington County Soil Conservation Service ("Conservation Office") in late 1999 and met with Gary Wenger, a soil conservation technician.  At that time, Mr. Wenger was also Mrs. Bain's farm tenant.  He initiated the process to design the pond and a site survey was done to determine the best placement of the pond.

Defendants' Exhibit X is a copy of a letter to Mrs. Bain from the Conservation Office dated June 16, 2000 and signed by Gary Wenger.  It describes Debtors' plans to build a pond with the dam and pond possibly being partially on Mrs. Bain's property.  It also identifies an option to move the dam if Mrs. Bain did not want water on her property.  The letter further states that Debtor Joe Hammen would contact her with a "Group Planning Request".

The "Group Planning Request" is set out as Defendants' Exhibit Z.  It is an agreement by both parties to cooperate with the Conservation Office in evaluating what is described as an erosion issue involving the parties' land.  The document anticipates a future survey and investigation by the Conservation Office, with a resulting "group inventory and evaluation report."  If this report was acceptable to the parties, the Group Planning Request provides:

> [W]e the undersigned will secure the necessary land easements and rights-of-way, permits, and arrange for the financing and division of costs for construction, operation, and maintenance of the proposed works of improvement.

Defs.' Ex. Z.  The record is silent on any follow-up beyond the Group Planning Request except for a survey which was apparently completed.

Gary Wenger testified that he prepared the Group Planning Request and printed the names of Joe Hammen and Frances Bain with places for them to sign at an X.  The document is not dated.  Debtor Joe Hammen signed under the line where his name is

2

printed.  The printed name of Frances Bain appears under the line where her name was placed by Mr. Wenger.

Gary Bain, Frances Bain's son and one of the executors of her estate, testified that this was not his mother's signature. He first saw this document sometime after Mrs. Bain's death when he received a copy of it from Gary Wenger.  Mr. Bain testified he immediately stated to Gary Wenger that was not his mother's signature and Gary Wenger agreed with him.  Gary Wenger testified he does not recall agreeing with Gary Bain regarding whether that was Mrs. Bain's signature.

Debtors presented the testimony of Barbara Downer, a board-certified forensic document examiner.  She stated she compared the printed signature of Frances Bain on the Group Planning Request with the various signatures on Defendant's Exhibits A through T.  Ms. Downer pointed out that the "B" in Bain had similar characteristics in the printed signature and the cursive signatures.  She stated she found no signs of forgery.  Also, the letter ratios or proportions were consistent between the cursive and printed signatures.  Ms. Downer concluded that it is "highly likely" that Mrs. Bain signed the Group Planning Request with her printed signature.

Clarence Wenger, a neighbor who has known Mrs. Bain since they were children, testified that he talked to Mrs. Bain at the request of Debtor Joe Hammen.  He stated that Mrs. Bain's daughter, Lora Bain, was also present.  Mr. Wenger asked Mrs. Bain if she would sell a little of her land to make a nicer place for Joe Hammen's home and the pond.  The specific date of this conversation is not known, although it allegedly occurred close to the time the pond was built in the summer of 2000.  Mr. Wenger testified that Mrs. Bain stated that she was not going to give any more ground and pounded the table.  She said other people had asked and she didn't want to talk about it.

Debtor Joe Hammen testified that he talked to Clarence Wenger about whether he would contact Mrs. Bain to help him get her consent for his plans to build a pond.  He did not intend to ask Mrs. Bain to sell any of her land for his pond project. Debtor believed Mr. Wenger preferred not to talk to Mrs. Bain. He testified he did not know Mr. Wenger actually talked to Mrs. Bain or that he asked her to sell Debtor some of her land until this litigation arose.

Gary Wenger, Mrs. Bain's farm tenant and the Conservation Office's technician in charge of Debtors' pond project, testified that he has a vague recollection of trying to sell the project to

3

Mrs. Bain – promoting it to her because it would be a good deal for her.  He stated he wanted her to benefit from it.  Gary Wenger was present when some of the work was being done on the terrace and pond.

Debtors' brief states:  "Gary Wenger testified that he encouraged her [Mrs. Bain] to agree to the project and that she told him she intended to do so."  Defs.' Brief at 21.  The Court notes that this statement, regarding what Mrs. Bain told Gary Wenger she intended to do, does not appear in the record.  A misstatement of the record also appears in Plaintiff's brief at page 8.  The brief states:  "Both Gary and Lora Bain testified that they were unaware of what was occurring regarding the encroachment, and only learned of it after the death of their mother."  This is incorrect.  Lora Bain did not testify at trial or otherwise on this issue.

Plaintiff presented testimony of Robert Petrzelka regarding the value of trees and shrubs which were removed from the Bain property when the pond was built.  Mr. Petrzelka stated it would cost Plaintiff $4,500 to $4,800 to replant approximately 10 trees and 40 shrubs.  On cross examination, he stated he did not see much commercial value, from photos, in the trees and shrubs as they existed on the Bain property prior to the pond being built or on adjacent land.  The vegetation removed was mainly in a steep ravine and would not have been of high quality.  This opinion was supported by testimony of other witnesses at the trial, including Gary Wenger and Irvin Leichty.

Testimony was offered concerning the value of the fence around Debtor's property at the time they built the pond and the terrace.  Defendants' Exhibits CC, DD and EE indicate refencing of the North, East and West borders of Debtor's property would cost a total of $2,365.  Plaintiff wishes to use the property surrounding Debtor's tract as pasture and needs to fence it to contain livestock.

The witnesses familiar with the state of the previous fence, Gary Wenger, Joe Hammen, and Harold Steele, the former owner of Debtors' property, all testified that the fence was in poor shape and ineffective for containing livestock at the time the pond was built.  Harold Steele also testified that, through agreements with Mrs. Bain's husband, Ralph Bain, the previous fence was not placed on the lot lines because of the way the land dropped off in places.  All of the previous fence around the lot was removed when Debtors built the pond and terrace.

Irvin Leichty, who constructed the dam and pond, testified that he pushed all the old fence onto the Bain property where it would help prevent erosion. He stated the fence was not good and was covered with brush. He also stated that no remarkable trees were removed for the pond construction. He estimated that he could remove the fence debris which was left on the Bain property for approximately $800. Mr. Leichty testified he thought Gary Wenger was the coordinator of the project for Mrs. Bain because he was the tenant of the adjoining property. He stated he would have had Gary Wenger's permission to put the remains of the old fence on the Bain property.

Plaintiff complains about some concrete and bricks on the Bain land behind the dam. Gary Bain testified he thought Debtors had debris from old buildings on their property which they deposited on the Bain property while the pond and dam were being built. Both Joe Hammen and Harold Steele testified that there were no buildings on the property when Mr. Steele sold it to Debtors. Mr. Hammen testified that he brought concrete and bricks from a job site where he was working construction to the property. He placed these items on the back side of the dam by hand a year or two after the dam was built in order to control erosion.

Debtors Joe and Cynthia Hammen both testified about their meeting with Mrs. Bain before the pond was built. Joe Hammen had asked Clarence Wenger if he would talk to Mrs. Bain for them about the pond project. Mr. Hammen testified that Mr. Wenger "hemmed and hawed" so he thought Mr. Wenger didn't want to talk to Mrs. Bain for them. Shortly after that, Debtors received the Group Planning Request from the Conservation Office. They called Mrs. Bain and met with her alone at her home the following Saturday or Sunday.

Debtors testified that they visited with Mrs. Bain for a couple of hours and talked about all the people in her many family photos. Mrs. Bain was concerned about the cost of the pond. Debtors assured her they would pay for the total cost. Mr. Hammen testified that Mrs. Bain even came down to asking about seeding the grass and he told her they would do that according to the recommendations of the Conservation Office. Mrs. Hammen testified that Mrs. Bain knew a ravine existed on her property at the point where the pond would be built. She stated that Mrs. Bain had no objection to the pond whatsoever as long as she did not need to pay for anything. Both Debtors testified that they saw Mrs. Bain sign the Group Planning Request.

5

   Afterward, Mr. Hammen took the document to Gary Wenger at his nearby home. Mr. Hammen asked if they needed any other documents besides the Group Planning Request and Gary Wenger told him no, that was all he needed to begin the project. Gary Wenger testified that Debtors followed the procedure in place at that time. Both Gary Bain and Gary Wenger testified that the Conservation Office's procedures have now changed. The Group Planning Request form now requires notarized signatures and the Conservation Office prepares easements when they are needed. These changes have been put in place, in part, because of Debtors' pond project.

   Mr. Hammen also testified that he later called Mrs. Bain and asked her if she was interested in selling some ground North and West of his property. He wanted enough land to have a total of 40 acres. Mr. Hammen testified that initially Mrs. Bain said she was interested. When he called her back, however, she said she better not because her children would get mad.

### THE ARGUMENTS

   Plaintiffs allege that Debtors did not have Mrs. Bain's legal consent to construct the pond. They contend that Frances Bain's printed signature on the Group Planning Request was forged. In the alternative, Plaintiff argues that even if Mrs. Bain printed her signature, Debtors must have misrepresented the scope of the project to get her signature. It asserts the forgery or misrepresentation constitutes fraud or willful injury under § 523(a)(2)(A) or § 523(a)(6). Plaintiff further argues that the pond and dam constitute a continuing nuisance for which they are entitled to damages. It argues its claim is not barred by the statute of limitations because the Bain family was unaware that the pond and dam encroached on Mrs. Bain's property until a survey was prepared in 2006, after her death. Plaintiff seeks injunctive relief, including removal of the pond and dam from the Bain property, plus an award of damages for the cost of the trees and fence removed, cleanup costs and attorney fees.

   Debtors assert they have committed no fraud or misrepresentation. They argue that they have either an express easement or an easement by promissory estoppel. Debtors deny that the pond and dam constitute a nuisance because Mrs. Bain consented to their construction. If the dam constitutes a nuisance, they argue it is permanent, rather than continuing. Because Mrs. Bain knew of the pond and dam in 2000, an action for damages is barred by the Statute of Limitations. If damages are awarded, they should be limited to diminution of market value of the Bain land.

6

The issues thus framed initially require a determination of the legal relationship between the parties under Iowa law.  After defining those relationships, the Court will examine the issues in the context of bankruptcy law.

### EXPRESS EASEMENT OR EASEMENT BY ESTOPPEL

Debtors assert that their modifications to the Bain property were consensual and based on either an express easement or, alternatively, an easement created by promissory estoppel.

An easement, under Iowa law, is a restriction on another person's property rights.  Gray v. Osborn, 739 N.W.2d 855, 861 (Iowa 2007).  Express grant or reservation is the primary method used to create an easement. Nichols v. City of Evansdale, 687 N.W.2d 562, 568 (Iowa 2004).  Because an easement is an interest in real property, express easements fall within the statute of frauds and must be in writing.  See Iowa Code § 622.32.  "[N]o magic words or terms of art are necessary to create an easement." Gray, 739 N.W.2d at 855.  In determining the existence of an easement, the intention of the parties is of paramount importance. Id., citing Restatement (Third) of Property: Servitudes § 2.2 cmt. d (2000).  As a general rule, "easement holders not only have the right but an obligation to repair and maintain their easement as necessary." Koenigs v. Mitchell County Bd. of Supervisors, 659 N.W.2d 589, 594 (Iowa 2003).

The Iowa courts have also recognized an alternative method of creating an easement.  In Miller v. Lawlor, 66 N.W.2d 267 (Iowa 1954), the Iowa Supreme Court recognized the applicability of promissory estoppel in the context of land-use restrictions. The essential elements of promissory estoppel are: "(1) a clear and definite promise; (2) proof the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and (3) a finding the equities support enforcement of the agreement." In re Estate of Graham, 295 N.W.2d 414, 418 (Iowa 1980).  In applying the doctrine of promissory estoppel, each case must be decided in light of its surrounding facts and circumstances. Johnson v. Pattison, 185 N.W.2d 790, 795 (Iowa 1971).  Proof of the elements of promissory estoppel will remove an oral contract involving an interest in real estate from the statute of frauds. Johnson, 185 N.W.2d at 795; Miller, 66 N.W.2d at 272; see also Restatement (Third) of Property: Servitudes § 2.9 (2000) (providing an exception to the Statute of Frauds where the beneficiary justifiably relied on the existence of easement).

In the creation of an easement by estoppel, the Iowa Supreme Court relaxed the traditional requirements for a prescriptive easement "in those situations in which the party claiming the easement has expended substantial amounts of labor or money in reliance upon the servient owner's consent or [] oral agreement to the use." Brede v. Koop, 706 N.W.2d 824, 828 (Iowa 2005). Under this exception to the strict rules governing prescriptive easements, an easement by estoppel may arise:

> in those instances in which the original entry upon the lands of another is under an oral agreement or express consent of the servient owner and the party claiming the easement expends substantial money or labor to promote the claimed use in reliance upon the consent or as consideration for the agreement.

Id., quoting Simonsen v. Todd, 154 N.W.2d 730, 733 (Iowa 1967); see also Restatement: Servitudes, §§ 2.1, 2.10 (allowing that an easement may be created by estoppel).

## ANALYSIS

Debtors allege they possess either an express easement or an easement by estoppel to construct and maintain the pond and dam. In so doing, Debtors rely heavily on the document known as the Group Planning Request, Defendants' Exhibit Z. Debtors allege that Mrs. Bain voluntarily executed the Group Planning Request thereby authorizing construction of the dam and pond. They assert Mrs. Bain signed the document and deny Plaintiff's claims that the signature is a forgery. Finally, Debtors assert that, even if there is no express easement, the Court must find the existence of an easement by estoppel under Iowa law. They assert this easement was created by representations made between the parties during the course of discussions.

Plaintiff has challenged the validity of the signature of Mrs. Bain on the Group Planning Request. Debtors' assertion of an express easement relies exclusively upon rights purportedly granted in this document. The validity of the signature of Mrs. Bain is essential to the creation of any express easement between the parties. Plaintiff asserts that Mrs. Bain's signature on the Group Planning Request was forged. To rebut the claim of forgery, Debtors presented testimony by Barbara Downer. Ms. Downer testified as a handwriting expert. The unusual feature of Mrs. Bain's purported signature on the Group Planning Request is that it is not written in cursive but is printed. However, Mrs. Downer compared known exemplars and, in her expert opinion, concluded that the writing on the Group Planning Request is that

of Mrs. Bain.  Mrs. Bain's motivation for printing her name rather than writing it in cursive remains unknown.  Though the signature appears somewhat unusual, the Court concludes that the writing of Mrs. Bain on the Group Planning Request is her writing and reflects her consent to the terms of the Group Planning Request.

    Debtors argue that if they establish the authenticity of Mrs. Bain's signature, the Group Planning Request establishes the existence of an express easement to construct the dam and pond partially upon the property of Mrs. Bain.  However, the voluntary signature of Mrs. Bain provides consent only to the terms contained in the document itself.  Debtors urge broad rights including an express easement out of a document that is limited in scope.  The Group Planning Request is not a contract between Mrs. Bain and Debtors.  It is an agreement between Mrs. Bain and Mr. Hammen on one side and the Soil and Water Conservation District Commissioners on the other.  It is limited to cooperation in solving an erosion issue which purportedly involved both the Bain property and the Hammen property.  The land owners agreed to cooperate with the Conservation Office in creating solutions to this problem.  In return, the Conservation Office committed to furnishing technical assistance, surveys and investigations to develop solutions to these problems.

    From this analysis, it is apparent the Group Planning Request makes no contractual promises between Mrs. Bain and Mr. Hammen.  Their commitments, if any, were made to the Soil and Water Conservation District.  Secondly, this document does not speak in terms of the creation of property rights between Mrs. Bain and Debtors.  The opposite is true.  The express language of the document anticipates future agreements before changes occurred on the property.  The document provides that, after an examination of the property and its needs, a group inventory and evaluation report would be completed.  Only after the inventory and evaluation report were submitted and approved by all parties would the parties secure and execute necessary land easements and right-of-way permits.  Only after all documentation was completed would the project proceed.  The evidence does not establish that any of the subsequent events envisioned in the Group Planning Request were ever completed.

    Debtors ask the Court to interpret the Group Planning Request in a manner which is much broader than the document provides.  They ask the Court to conclude that the Group Planning Request has the requisite elements for the creation of an express easement.  The reality of this record is that many of the current

problems exist because none of the parties involved in this project followed the steps which were intended in the Request.

The Court has considered the legal criteria required to create an express easement under Iowa law. An express easement is an agreement which affects real property and must be in writing. While no specific language is necessary, the agreement must express an intent on the part of the parties to assume the obligations of an easement. The requisite elements necessary under Iowa law are completely lacking in the Group Planning Request. The Court concludes that, though the signature of Mrs. Bain is legitimate, the document is of limited scope and cannot be interpreted to include the rights and obligations which Debtors attempt to attach to it.

Debtors take the position that, even if the Court concludes that the Group Planning Request does not create an express easement, the parties' course of conduct and mutual promises create an easement by estoppel recognizable under Iowa law. Promissory estoppel creates a narrow exception to the requirement that easements satisfy the statute of frauds. To impose an easement by promissory estoppel, the party against whom the easement is created must make a clear and definite promise authorizing its creation. There must be satisfactory evidence that the party urging the establishment of the estoppel acted to its detriment in reasonable reliance upon that agreement. Finally, the Court must conclude that the equities support the enforcement of such an agreement. In applying these elements to this record, the Court notes that all evidence of the parties' alleged agreement is provided by Debtors. Though no objections were lodged, all testimony concerning statements purportedly made by Mrs. Bain to establish consent are hearsay in nature, made by a now deceased person, and are self-serving.

The record, independent of statements by Mrs. Bain, establishes significant uncertainty concerning the extent of agreement between the parties, if any. There is testimony that Mrs. Bain had been approached by Clarence Wenger who sought her consent to sell a parcel of property to Mr. and Mrs. Hammen. The record shows that she became upset and told Wenger that she did not want to talk about it. Other testimony establishes the general unwillingness of Mrs. Bain to deal with these issues. Mr. Hammen testified that he had asked Mrs. Bain if she would be willing to sell a portion of her ground and while she initially expressed interest, she subsequently told him she would not do so because her children would become angry. She was also approached by Gary Wenger who testified he had a vague recollection of

talking to Mrs. Bain about the project because it was a good deal for her.

Over a period of time, numerous individuals approached Mrs. Bain for the purpose of obtaining consent to construct the pond and dam. While their purpose was to obtain consent to construct this pond, their approach varied from one individual to another. Some approached Mrs. Bain for the purpose of having her sell land to Mr. and Mrs. Hammen. Others approached the project seeking an easement. The record, however, establishes no general consensus on any of the matters essential to the creation of an easement or implementation of its terms.

Any purported promises made by Mrs. Bain must be based upon the conversation which Mr. and Mrs. Hammen had with Mrs. Bain on the date that she executed the Group Planning Request. Even the testimony of Mr. and Mrs. Hammen does not establish any specific promise made to them by Mrs. Bain. They testified that Mrs. Bain had no objection to the pond as long as she did not need to pay for it. However, the entire conversation was in the context of the Group Planning Request and there is no testimony to indicate that her commitment to the project, if any, went beyond this preliminary stage.

Assuming that Mrs. Bain knew the contents of the document, and understood its implications, it is not unreasonable to conclude that she understood that this document was preliminary in nature and additional documentation was necessary before construction actually began. To conclude that Mrs. Bain made a specific promise to Mr. and Mrs. Hammen to agree to proceed with this project at this stage of the discussions is unwarranted on this record. It is more probable that she anticipated additional discussions, negotiations, and legal documentation. In fact, the record establishes that Mr. Hammen, himself, possibly anticipated the need for further written agreements. After Mrs. Bain executed the Group Planning Request, he asked Gary Wenger, the Conservation Officer, if any further documents were needed. Once he was assured that there was not, the project proceeded.

The record compels a finding that Mr. and Mrs. Hammen acted to their detriment in proceeding with this project after the execution of the Group Planning Request. However, the record is devoid of evidentiary support that Mrs. Bain made a clear and definite promise upon which Mr. and Mrs. Hammen relied. Mr. and Mrs. Hammen proceeded with the project only after being assured by the Conservation Officer that it was appropriate for them to do so. If Mr. and Mrs. Hammen had not relied upon the statements of the Conservation Officer, or had sought legal advice, or had

proceeded in accordance with the Group Planning Request, the uncertainty of the legal status of the parties would not exist.

This Court concludes that Mrs. Bain made no promises upon which Debtors were justified in relying before proceeding with the construction of the pond and dam. The record establishes that Debtors were eager to implement this project and, in their eagerness, they failed to take precautions which would have prevented the present controversy. It was their project and they had more support and guidance in its implementation than Mrs. Bain had. The fact that they elected to proceed without proper protections cannot now be made the fault of Mrs. Bain. It is the conclusion of this Court that Debtors have failed to establish the requisite elements of promissory estoppel. Any conduct of Mrs. Bain does not justify the imposition of an easement by estoppel in favor of Debtors.

### TRESPASS OR NUISANCE, PERMANENT OR CONTINUING

Having determined that Debtors constructed the pond and dam without legal consent, the Court must decide the present legal status of the pond and dam on the Bain property, as well as the liability of Debtors. The basis of a claim for trespass on land is the wrongful interference with another's possessory rights in property. Robert's River Rides, Inc. v. Steamboat Dev. Corp., 520 N.W.2d 294, 301 (Iowa 1994). A private nuisance, as distinguished from trespass, is an actionable invasion of interests in the use and enjoyment of land. Ryan v. City of Emmetsburg, 4 N.W.2d 435, 438 (Iowa 1942); see also In re Weinhold, 393 B.R. 623, 632 (Bankr. E.D. Wis. 2008) (distinguishing between trespass and nuisance). "Trespass comprehends an actual physical invasion by tangible matter. An invasion, which constitutes a nuisance is usually by intangible substances, such as noises or odors." Ryan, 4 N.W.2d at 438.

A person is liable for trespass to land if he or she "fails to remove from the land a thing which he [or she] is under a duty to remove." Nichols v. City of Evansdale, 687 N.W.2d 562, 567-68 (Iowa 2004), quoting Restatement (Second) of Torts § 158(c) (1982). If the alleged trespasser has an easement over the property, it has no duty to remove and is not liable for trespass. Nichols, 687 N.W.2d at 568. If not, it is committing a continuing trespass. Id. at 572. Iowa law generally recognizes these legal principles in situations involving encroaching fences or livestock. Hawkeye Land Co. v. Laurens State Bank, 480 N.W.2d 854, 857 (Iowa 1992); Restatement (Second) of Torts § 160 (1982).

A trespass of a permanent nature, as distinguished from continuing trespass, permanently changes the physical condition of the land. Restatement (Second) of Torts § 162 (1982).

> Thus, if one, without a privilege to do so, enters land
> of which another is in possession and destroys or
> removes a structure standing upon the land, or digs a
> well or makes some other excavation, or removes earth
> or some other substance from the land, the fact that
> the harm thus occasioned on the land is a continuing
> harm does not subject the actor to liability for a
> continuing trespass. Since [the] conduct has once and
> for all produced a permanent injury to the land, the
> possessor's right is to full redress in a single action
> for the trespass, and a subsequent transferee of the
> land, as such, acquires no cause of action for the
> alteration of the condition of the land.

Id., cmt. e.

"Where a trespass is of a permanent nature, all damages, past and prospective, are recoverable in one action." Moore v. Dubuque County Abstract & Title Co., 2001 WL 913844, 6 (Iowa App. 2001), quoting 75 Am. Jur. 2d Trespass § 119 (1999). In the case of a continuing trespass, the landowner has a series of independent causes of action for trespass until the trespasser removes the thing in question. Hawkeye Land Co., 480 N.W.2d at 857. The court may grant injunctive relief as an alternative to damages in situations of continuing trespass. Id.

Under certain circumstances, the injured party may elect whether to treat the trespass as permanent or continuing when seeking damages. Irvine v. City of Oelwein, 150 N.W. 674, 678 (Iowa 1915); Risher v. Aken Coal Co., 124 N.W. 764, 765 (Iowa 1910) (holding plaintiff may elect whether to treat injury from nuisance as permanent or continuing). Damages for permanent trespass are those which will make the owner whole for depreciation of the property. Irvine, 150 N.W. at 678. Damages for continuing trespass may be an order for abatement or the decrease in rental value of the property up to the time of suit. Id.

The nature of a nuisance or trespass is of particular importance when determining the applicability of the statute of limitations. See id. If the trespass is permanent, the statute begins to run from the time the trespass commences. Id. The nature of the trespass is also important when determining whether a claim is dischargeable in bankruptcy. See Int'l Paper Co. v.

13

MCI WorldCom Network Servs., Inc., 442 F.3d 633, 636-37 (8th Cir. 2006) (considering trespass by installation of fiber optic cable).  Where the trespass claim accrues prepetition, it is dischargeable.  Id. (holding claim accrued when cable was installed); see also Weinhold, 393 B.R. at 635 (concluding claims for permanent trespass or nuisance from driveway constructed prepetition were discharged).

### STATUTE OF LIMITATIONS

In Iowa, an action for trespass to property must be commenced within five years of discovery of the trespass.  See Iowa Code §§ 614.1(4), 614.4.  The five-year limitations period begins upon the accrual of the claim.  K & W Elec., Inc. v. State, 712 N.W.2d 107, 116 (Iowa 2006).  The pertinent inquiry is when did the aggrieved party discover its claim for trespass. Id. (discussing inverse condemnation and nuisance).  The defendant must demonstrate that the aggrieved party had actual or imputed knowledge of the injury and its cause prior to five years before the action is commenced.  Id.

If a trespass or nuisance is caused by a structure that is permanent and the injury is permanent, the statute of limitations runs from the time the structure is built.  Thomas v. City of Cedar Falls, 272 N.W. 79, 80 (Iowa 1937).  In Thomas, the court concluded that construction of a dam or embankment on adjacent property, which interfered with the natural flow of water, caused a permanent injury.  Id. at 83; see also Nall v. Iowa Elec. Co., 69 N.W.2d 529, 533-34 (Iowa 1955) (concluding dam on adjacent land caused permanent injury; action was barred by statute of limitations).

In contrast, "[i]f the injury is not permanent, then successive actions lie." Thomas, 272 N.W. at 80.  Where the wrongful act is continuous, separate and successive actions for damages arise.  Hegg v. Hawkeye Tri-County REC, 512 N.W.2d 558, 559 (Iowa 1994).  In Hegg, the court held that injuries resulting from stray voltage were recurring and noted that recovery is "limited to those actions accruing during the statutory period". Id. at 559-60.

The record identifies four separate acts of trespass to Plaintiff's land by Debtors as follows:

1.  Construction of the pond and dam partially upon Plaintiff's land.

14

    2.    Placement of old fence material and other debris on Plaintiff's land when the pond and dam were constructed.

    3.    Removal of trees and shrubs in the building of the pond and dam.

    4.    Placement of concrete and brick behind the dam for erosion control by Debtors a year or two after construction of the dam.

The first trespass relates to the construction of the pond and dam. Under Iowa law, the construction of this type of earthwork constitutes a permanent change to the land which subjects Debtors to a claim for damages in a single action. The statute of limitations commences for a claim of damages based upon a permanent trespass at the time construction commences. In this case, construction began on the pond and dam in August or September of 2000. The statute of limitations expired five years later under Iowa law, in August or September of 2005 unless the discovery rule applies in this case.

Plaintiff appears to argue alternatively that Mrs. Bain was not aware of the construction and also that other members of the Bain family were not aware of the encroachment until a survey was done after Mrs. Bain's death. It is the conclusion of this Court that the statute of limitations bars any action for trespass on this claim.

Plaintiff argues that Mrs. Bain was not aware of the existence of the construction of the pond and dam. However, this construction was open and notorious. Most people in this neighborhood were well aware of its existence. Though Mrs. Bain did not give legal consent to the construction of the pond and dam, she knew or should have known of its existence. Any claim which she had under Iowa law expired five years after commencement of the construction of Debtors' pond and dam. The statute of limitations expired shortly before Mrs. Bain's death in October 2005.

Plaintiff argues that other members of the Bain family were not aware of the encroachment until a survey was done after Mrs. Bain's death. The discovery rule does not apply to the Bain family or the executors of Mrs. Bain's Estate. The action for trespass belonged to Mrs. Bain during her life and it expired prior to her death. Plaintiff, as a successor in interest, is bound by the statute of limitations applicable to the decedent. Any claim against Debtors based upon the permanent trespass

created by the construction of the pond and dam is barred by the Iowa five-year statute of limitations.

The second trespass relates to the placement of the old fence and associated debris on Mrs. Bain's property at the time of the construction of the pond and dam. Under the definition of a continuing trespass provided in Iowa law, the fence debris constitutes a continuing trespass. Under Iowa law, any claim is limited by the five-year statute of limitations. Thus, Plaintiff holds a claim for damages from the fence debris which arose during the previous five years. If separate damages from the fence debris arose more than five years ago, Plaintiff is barred by the statute of limitations from further recovery for those damages.

The third act of trespass relates to Plaintiff's claim for replacement of fencing, trees, shrubs and other vegetation removed during construction of the pond and dam. Under Iowa law, these claims are subject to either a two- or five-year statute of limitations. The fence, trees and other items under this category were destroyed or damaged at the time of the construction of the pond and dam in August or September 2000. The Iowa statute of limitations bars any claims for damage or replacement of these items.

The final act of trespass relates to the placement of bricks and concrete below the dam by Mr. Hammen for erosion control a year or two after the construction of the pond and dam. Under Iowa law, these would be properly considered a continuing trespass since they are subject to removal or damages on a continuing basis. Again, however, any damages are limited to those periods of time which are properly within the statute of limitations and are also subject to limitations created by the bankruptcy discharge.

### EXCEPTION FROM DISCHARGE, §§ 523(a)(2)(A) AND (a)(6)

The foregoing analysis relates to the existence of claims by Plaintiff against Debtors under applicable Iowa law. A potential claim existing as of the time of the filing of Debtors' Chapter 7 petition consists of a claim for the continuing trespass relating to the placement of the fence and associated debris upon Plaintiff's property. A second claim relates to the placement of concrete and bricks at the base of the dam on Plaintiff's property. The impact of Debtors' Chapter 7 petition must be examined to determine which claims by Plaintiff survive the entry of a discharge. Plaintiff asserts that its claims survive the

16

discharge because of conduct by Debtors which excepts debt from discharge under §§ 523(a)(2)(A) and (a)(6).

Section 523(a)(2)(A) excepts from discharge debts arising from fraud or misrepresentation by debtors. Five elements must be satisfied before a debt will be excepted from discharge under § 523(a)(2)(A): (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations, Field v. Mans, 516 U.S. 59, 72 (1995); and (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987); In re Burghoff, 374 B.R. 672, 678 (Bankr. S.D. Iowa 2007) (Kilburg, J.).

Debts arising from "willful and malicious injury by the debtor to another entity" are excepted from discharge under § 523(a)(6). "Willful" and "malicious" are two separate elements. In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999). The "willful" element of § 523(a)(6) requires the plaintiff to show that the debtor intended the injury, not just that a deliberate or intentional act lead to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). Malice requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial harm. In re Madsen, 195 F.3d 988, 989 (8th Cir. 1999).

The Court has set out substantial findings of fact previously in this opinion. No purpose would be served by applying those facts in detail to the requisite elements necessary to establish grounds for denial of discharge. To summarize, this Court has concluded that Mr. and Mrs. Hammen were eager to construct the improvements to the land which they had purchased. In their eagerness to complete these improvements, they failed to take necessary steps to define their legal rights in relationship to Mrs. Bain. In so doing, they violated the property rights of Mrs. Bain in the various ways set out in this opinion. Having made those determinations, the Court further concludes that the record is devoid of any evidence that Debtors made misrepresentations to Mrs. Bain or anyone else with the specific intent to deceive others. Likewise, the record completely fails to establish evidence which would support a finding of willful and malicious injury by Debtors to Mrs. Bain through their construction of the pond and dam or in the accompanying damage which occurred.

As Plaintiff has failed to establish its claims to except debt from discharge under § 523(a)(2)(A) and § 523(a)(6), any and all damages for alleged trespass which arise prior to the filing of the Chapter 7 petition are discharged under bankruptcy law at the time of entry of Debtors' discharge. Plaintiff's remaining claims are limited to those which relate to the debris which remains on the Bain property as a continuing trespass from the date of filing of the Chapter 7 bankruptcy petition until the current time. Any damages from the deposit of this debris, which arises prior to the petition date of October 16, 2007, are included in Debtors' discharge. Included in Plaintiff's surviving claim is its claim for continuing trespass related to the placement of bricks and concrete below the dam by Mr. Hammen. The Court notes, however, that Mr. Hammen placed these materials at the base of the dam to prevent erosion. Any trespass in this regard is of a technical nature. Nevertheless, any damages from this claim are compensable only from the date of the filing of the Chapter 7 petition.

### DAMAGES

Plaintiff is entitled to damages caused by the fence debris remaining on the Bain land. This debris constitutes a continuing trespass for which Debtors are liable for the period since the filing of their bankruptcy petition on October 16, 2007. Under Iowa law, Plaintiff is entitled to the decrease in rental value of the property up to the time of suit, or an order for abatement for a continuing trespass.

Irvin Leichty testified that he could remove the fence debris on the Bain land for $800. In the Complaint, Plaintiff requests $1,000 to clean up trash pushed on its land during construction of the pond. The Court concludes that Plaintiff's demand of $1,000 as cleanup costs is reasonable.

The parties have not offered any evidence of rental value of the property or depreciation in its value. Gary Bain testified that the fence debris is in a 20- to 25-acre parcel of a larger 110-acre pasture on the Bain land. Plaintiff asserts the fence debris makes the pasture dangerous to use. It argues it also affects the value of the property if it was marketed for sale.

The Court concludes that Plaintiff is entitled to $1,000 for reasonable cleanup costs. This award of damages abates the continuing trespass caused by the fence debris. Plaintiff is

18

also entitled to damages of $1,000[1] for the loss of use of this portion of the larger pasture area on the Bain land since October 2007. Thus, Plaintiff is entitled to total damages of $2,000.

Plaintiff is also entitled to compensation for damages caused by the placement of the concrete and bricks at the base of the dam. The record is devoid of any evidence of substantial damage caused by the placement of this material. In fact, the evidence establishes that it was placed in this location in order to avoid future erosion. Therefore, the trespass and damages, if any, are technical and minimal in nature. The Court finds that a minimal award of $100 is appropriate to satisfy this claim.

**SUMMARY**

The Court finds that Debtors committed several acts of trespass upon the property of Mrs. Bain based upon their failure to obtain legally recognizable consent from Mrs. Bain for the pond and dam project. The dealings between Debtors and Mrs. Bain did not rise to a level sufficient to establish either an express easement or an easement by estoppel. The Court does find, however, that the signature on the Group Planning Request is that of Mrs. Bain. The Court concludes that various acts of trespass occurred in the construction of the pond and dam.

Through the interplay of Iowa law and Bankruptcy law, however, most of Plaintiff's claims are barred by the Iowa Statute of Limitations or the entry of the Chapter 7 discharge. Plaintiff's only viable claims arise from two acts of continuing trespass relating to 1) the deposit of fence material and other debris on the Bain property when the pond and dam were constructed and 2) the placement of concrete and bricks at the base of the dam a year or two after the construction of the dam. These are continuing trespasses with the extent of damages limited to that which occurred after the filing of Debtors' Chapter 7 petition on October 16, 2007. The entry of judgment for these acts satisfies all legally cognizable claims for all of the acts set forth in this record in the past and future.

---

[1]The Iowa State University Extension office estimates the average cash rent of pasture land in Iowa is $42.00 per acre in 2008. See "Iowa Farmland Rental Rates 1994-2008", Ag Decision Maker, File C2-09, http://www.extension.iastate.edu/agdm/wholefarm/html/c2-09.html. The Court calculates that the approximate rental value of the 20 to 25 acres of pasture land affected by the fence debris, for the past 14 months, is $1,000.

**JUDGMENT**

**WHEREFORE,** Plaintiff's Complaint to Determine Dischargeability of Debts is GRANTED IN PART AND DENIED IN PART.

**FURTHER,** the fence debris on the Bain land constitutes a continuing trespass for which Debtors are liable in the total amount of $2,000.

**FURTHER,** the placement of bricks and concrete behind the dam on the Bain property constitutes a continuing trespass for which Debtors are liable in the total amount of $100.

**FURTHER,** Plaintiff Frances E. Bain Estate is entitled to a judgment against Debtors Joseph F. Hammen and Cynthia J. Hammen in the amount of $2,100.

**FURTHER,** all other claims asserted by Plaintiff against Debtors are barred or denied as set out in this opinion.

**FURTHER,** judgment shall enter accordingly.

DATED AND ENTERED: January 23, 2009

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE